IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER LYNN PARKER )
)
    Plaintiff, )
)
 -vs- ) Civil Action 18-1621
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Jennifer Lynn Parker ("Parker") previously appealed a denial of a claim for disability insurance benefits. ("DIB") Because this Court found that Parker had not knowingly and voluntarily waived her right to counsel due to her intellectual deficits and that the absence of counsel resulted in prejudice, I remanded the case for further consideration. During the pendency of that claim, Parker had filed a new application for DIB which was approved. The Commissioner found Parker to be disabled as of June 28, 2014. Consequently, when the Appeals Council received this Court's order of remand, it affirmed the award of benefits as of June 28, 2014 and directed the ALJ to grant Parker a hearing and take any further action necessary to complete the administrative record and issue a decision with respect to the period prior to June 28, 2014. (R. 589-90)

Consequently, the ALJ held a hearing and both Parker and a vocational expert ("VE") appeared and testified. Following the hearing Parker, who was represented by

1

counsel, submitted additional records which were admitted into evidence. (R. 478) The ALJ ultimately denied Parker's claim, finding that she was not under a disability between September 13, 2012 through June 27, 2014. (R. 49) Parker then appealed. Pending are Cross Motions for Summary Judgment. See ECF Docket Nos. 16 and 22. For the reasons set forth below, the ALJ's decision is affirmed.

## Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by

substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue,* 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

The ALJ denied benefits at the fifth step of the analysis. More specifically, at step one, the ALJ found that Parker has not engaged in substantial gainful activity since the alleged onset date through June 27, 2014, the day before she began receiving disability benefits. (R. 481) At step two, the ALJ concluded that Parker suffers from the following severe impairments: hypertension, bipolar disorder, anxiety and panic attacks with agoraphobia, and borderline intellectual functioning. (R. 481-482) At step three, the ALJ determined that Parker did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 482-486) Between steps three and four, the ALJ decided that Parker

had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 486-90) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Parker's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could have performed. (R. 490-91)

III. Discussion

(1) The RFC and Medical Opinions

Parker challenges the ALJ's formulation of the RFC, specifically in how the ALJ assessed the medical opinions offered by her treating psychiatrist and the state agency psychologists.[1] A claimant's RFC consists of "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2010), quoting, Burnett v. Comm'r. of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations, and description of his / her limitations. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The regulations provide that for claims, such as Parker's, that were filed before March 27, 2017, a treating physician's opinion should be given "controlling weight" provided that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence of record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). See also, Fargnoli, 247 F.3d at 43. "The ALJ may not reject a physician's findings unless she first weighs the findings against other relevant evidence and explains why certain evidence has been accepted

---

[1] Parker does not challenge the weight the ALJ afforded other medical opinions of record or contend that substantial evidence of record fails to support those findings. Dr. Nallathambi, who managed Parker's medication of Seroquel, never increased or changed the medication, noted improvement with the medication, and reported normal depression screenings despite complaints of anxiety. (R. 487, citing Exhibits 9F). Additionally, as the ALJ noted, Dr. Uran observed that Parker is capable of performing simple, routine work. (R. 489)

4

and other evidence rejected." *Scandone v. Astrue*, Civ. No. 05-4833, 2011 WL 3652476, at * 7 (E.D. Pa. Aug. 18, 2011). Of course, "'[t]he law is very clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 20111), *quoting, Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, opinions proffered by state agency medical and psychological consultants merit significant consideration as well because they are considered experts in the Social Security disability programs. *Chandler,* 667 F.3d at 361, *citing,* 20 C.F.R. §§ 404.1527(f), 416.927(f).

> Here, the ALJ found that, through June 27, 2014, Parker had the RFC to perform:
>
> light work as defined in 20 C.F.R. 404.1567(b), except work is limited to SVP 1 and 2 jobs; limited to simple, routine, and repetitive tasks involving only simple work-related decisions, with few, if any work place changes; only occasional interaction with the public; occasional interaction with coworkers with no tandem tasks; and only occasional supervision.

(R. 486) In so finding, the ALJ afforded no weight to the opinions offered by Parker's treating psychiatrist and the state agency psychologists – Drs. McGorrian, Vigna and Santilli. The ALJ explained that none of these opinions were relevant to the period under consideration. (R. 489) I agree that each opinion is dated in 2016, well after the period at issue. (R. 662, 671, 766-69) Further, none of the opinions explicitly state that they are addressing Parker's impairments between September 13, 2012 and June 27, 2014. Indeed, these reports were prepared for and considered in connection with the application Parker filed *after* she was unsuccessful at the initial stages of the current claim. As such, these physicians were only considering Parker's condition as of June 28, 2014. (R. 676)

I agree with Parker that there is some logic to her contention that "[c]learly there was no change in Plaintiff's medical condition on June 28, 2014 that did not exist on June 27, 2014…." *See* ECF Docket No. 17, p. 10. Yet the question before me is not whether I would have decided the issue differently than did the ALJ. I am tasked with assessing whether the ALJ's decision is supported by substantial evidence of record. Parker has not identified any case law indicating that the ALJ was compelled to give significant weight to opinions authored years after the time at issue. I recognize Parker's position that Dr. Santilli reviewed and referenced Dr. Uran's opinion and that Dr. Uran's opinion relates to the time period at issue. Yet Santilli referenced Uran's opinion in the context of assessing support for McGorrigan's opinion. (R. 662) She was not authoring an opinion as to Parker's medical impairments during the time frame at issue. Because Parker's RFC and medical opinion arguments are based upon opinions which post-date the relevant time period at issue and because those opinions do not relate back to the relevant time period at issue, I find her contention unpersuasive and conclude that the ALJ did not err in discounting their relevance. *See Plaza v. Barnhart*, 218 Fed. Appx. 204, 207-08 (3d Cir. 2007) (rejecting the contention that a physician's opinion letter post-dating the relevant time period at issue requires remand); *Vivino v. Colvin*, Civ. No. 15-6393, 2016 WL 4581408, at * 5 (D. N.J. Sept. 2, 2016) (affirming an ALJ's discounting of medical opinions that were authored significantly later than the date last insured and which did not appear to relate to the relevant time period).

(2) GAF Scores

Parker also objects to the ALJ's decision to afford "little weight" to Parker's Global Assessment Functioning ("GAF") scores of 45. (R. 487) A "GAF score is a 'numerical

6

summary of a [mental health] clinician's judgment of an individual's overall level of functioning.'" *Rivera v. Astrue*, 9 F. Supp.3 495, 504 (E.D. Pa. 2014), quoting, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 2000). GAF scores are no longer favored in mental health assessments. "GAF scores have not been included in the most recent version of the DMS, published in 2013, due in part to their 'conceptual lack of clarity' and lack of validity." *Gonzalez v. Comm'r. of Soc. Sec.*, Civ. No. 18-4252, 2019 WL 2998730, at * 4 n. 9 (E.D. Pa. June 18, 2019), *citing*, DSM-V, at 16. Nevertheless, "the SSA has stated that 'we will continue to receive and consider GAF in medical evidence.'" *Torres v. Berryhill*, Civ. No. 16-2441, 2019 WL 4014416, at * 8 n. 8 (E.D. Pa. Aug. 23, 2019), *citing*, Social Security Administrative Message – AM 10344, effective July 22, 2013, revised October 14, 2014) ("AM-13066")."

> A GAF score:
>
> does not trigger any unique requirements for the ALJ to fulfill; the failure to invoke the number itself does not require remand. Rather, the question is whether the ALJ "conducted a thorough analysis of the medical evidence regarding plaintiff's mental impairments," … such that the ALJ properly "addressed the issues on which plaintiff's GAF scores were based," … In other words, even if the ALJ did not specifically mention the actual GAF number, she has provided "good reasons" for discounting the GAF score if she adequately explained why she discounted the whole of the source's opinion.

*Nix v. Colvin*, 190 F. Supp. 3d 444, 447-48 (E.D. Pa. 2016) (citations omitted).

Here, the ALJ does in fact reference the GAF scores. (R. 487) The ALJ acknowledged that a score of 45 "indicates [a] serious impairment in social, occupational, or school functioning…." (R. 487) Yet he also observed that "[u]nless the clinician clearly explains the reasons behind his or her GAF rating, and the period to

7

which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." (R. 487) Because in this instance, the clinician did not clearly explain the reasons behind the GAF scores, the ALJ discounted the rating. (R. 487) I find no error in this regard. *See Gilroy v. Astrue*, 351 Fed. Appx. 714, 715-16 (3d Cir. 2009) (affirming the denial of benefits even though the ALJ did not discuss GAF scores where the physician who recorded the scores did not express any opinions regarding specific limitations); *Elliott v. Colvin*, Civ. No. 17-235, 2018 WL 1509022, at * 1 n. 1 (W.D. Pa. March 27, 2018) (finding no error in the ALJ's failure to discuss a particular GAF score where the physician did not explain the basis for his score or assign any particular functional limitations); and *Ross v. Colvin*, Civ. No. 14-318, 2015 WL 456258, at * 7 (W.D. Pa. July 29, 2015). Consequently, I find no basis for remand.

    (3) Listing 12.05(C)

Finally, Parker contends that the ALJ erred in determining that she did not meet Listing 12.05C. Specifically, Parker criticizes the ALJ for using the current version of 12.05 rather than the version that was in effect when she first filed her claim. She contends that the evidence of record demonstrates that she satisfies Listing 12.05C as it existed before it was revised.

Significantly, Listing 12.05C was deleted from the Listings in January of 2017. Following remand, the ALJ evaluated Parker's conditions under the revised Listings. Parker urges that, because the ALJ was required to determine whether she was disabled between September 13, 2012 and June 27, 2014, "it is appropriate to use the Listing at 12.05 as it existed during that period of time." *See* ECF Docket No. 17, p. 18.

8

Yet she offers no argument in support of this assertion. This Court declines to provide an argument for her. Further, her argument is contrary to the regulations. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, at * 66138 n. 1 (Sept. 26, 2016) (stating that, "[i]f the court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand."). *See also, Davis v. Colvin*, Civ. No. 16-112, 2017 WL 1198381, at * 3 (W.D. Pa. March 30, 2017) (stating that "Listing 12.05 was revised significantly effective on January 17, 2017. On remand, it is presumed the ALJ will use the revised listing for the entire period at issue but will leave that decision to the Commissioner.") Further, I note that the revised Listing 12.05 was expected to be applied in very similar circumstances. *See Reed v. Berryhill*, Civ. No. 16-5675, 2017 WL 684154, at * 2 n. 3 (W.D. Wash. Feb. 21, 2017) (remanding where the ALJ failed to develop the record regarding the claimant's IQ scores and otherwise failed to properly evaluate whether the claimant met Listing 12.05, and noting that, on remand, the ALJ would have to apply the revised Listing 12.05.)

Because Parker's entire argument is based upon how the evidence of record establishes that she satisfies the evidentiary requirements of Listing 12.05C,[2] and

---

[2] Revised Listing 12.05 allows a claimant to demonstrate that she can satisfy subsection A or B. Although Parker does not attempt either, the ALJ's decision that she does not satisfy either is supported by substantial evidence of record. For instance, with respect to Listing 12.05A, a claimant must show, in part, that she is unable to participate in standardized testing of intellectual functioning. The record indicates that Parker was able to participate in such testing. (R. 483) Parker does not dispute this finding. With respect to 12.05B, the ALJ concluded that Parker could not demonstrate significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist or maintain pace; or (d) adapt or manage oneself. The only medical opinion on record relevant to the time period at issue was that of Dr. Uran. Dr. Uran found no extreme limitations and only one marked limitation. (R. 460-62) Parker does not contest these findings or point to any contrary evidence in the record.

9

because that Listing has been revised and is no longer applicable, I find that she has not presented a compelling argument for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| JENNIFER LYNN PARKER | ) | |
|     Plaintiff, | ) | |
|   -vs- | ) | Civil Action No. 18-1621 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 11th day of February, 2020, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 22) is GRANTED and the Motion for Summary Judgment (Docket No. 16) is DENIED. It is further ORDERED that the Clerk of Courts mark this case "Closed" forthwith.

                                      BY THE COURT:

                                      /s/ Donetta W. Ambrose
                                      Donetta W. Ambrose
                                      United States Senior District Judge